FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAY 1 2 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
SYLVESTER FRANKLIN,

                    Plaintiffs,

   -against-

THE CITY OF NEW YORK (CITY); THE NEW YORK
CITY POLICE DEPARTMENT (NYPD); individually and in
their official capacity as New York City Police Officers
LEI CUI and KADIA SAUNDERS,

                    Defendants,
-------------------------------------------------------------------------X

**FIRST AMENDED
COMPLAINT AND JURY
DEMAND**

# 10      2182

TOWNES, J.

GOLD, M.J.

Plaintiff Silvester Franklin, by and through his attorney, Martin Kanfer, Esq. state

as follows:

## INTRODUCTION

1.    This action arises from another shameful, vicious, and cruel act of police brutality

      and false arrest in the history of New York City.

2.    It seeks compensation for the unconstitutional and disgraceful conduct of police

      officers who abused and falsely arrested Silvester Franklin, police officers who

      witnessed or were aware of these events yet failed to report what they knew,

      thereby creating a "blue wall" of silence and lies to obstruct justice and prevent the

      truth from surfacing, and police supervisors who failed to control subordinates

      with a history of abusive behavior.  Ultimately, Mr. Franklin seeks redress against

      the City of New York for their deliberate indifference and negligence with respect

      to customs, policies, and practices that permitted, condoned, and preserved a "code

1

of silence" environment in which the most violent police officers believed they would be insulated from swift and effective investigation, prosecution, and conviction for even their most brazen acts of brutality. The inevitable result of this institutional indifference is the extraordinary injuries inflicted upon Mr. Franklin.

3.    During the late evening of February 13, 2009, Silvester Franklin was involved in a minor motor vehicle collision at Marcus Garvey Boulevard and Fulton Street, in the County of Kings, City and State and of New York. Mr. Franklin was at the time on his way home when his vehicle came in contact with another. Neither Mr. Franklin nor the driver of the other vehicle involved in the accident sustained any injuries. Mr. Franklin then verbally summoned the police who were in close proximity to the scene of the accident. Upon the arrival of the police to the scene of the accident Mr. Franklin presented them with his driver's license. The police officers then informed him that his licenses was suspended and proceeded to arrest him. During this process Mr. Franklin attempted to inform the officers that he had recently (January 20, 2009) had a fibrillator and staples placed in his heart as he suffered from cellulitis in his leg. Mr. Franklin pleaded and begged the officers to begged the officers to be gentle .This was done in an effort to caution the officers from aggravating his serious medical condition, however, he was ignored and shoved in the back of the police vehicle with his hands handcuffed behind him and forced to lie on his stomach. While being transported Mr. Franklin requested that

2

the officers open one of the windows in the back of the car as he was hot and unable to breathe but his request was ignored. Within minutes thereafter Mr. Franklin felt a hard and sudden impact and was thrown between the rear seat and front seats of the vehicle. He describes a kind of metal or plastic material on the back of the front seats that caused severe trauma to his neck and back. The fibrillator in his heart malfunctioned multiple times and an ulcer on his right leg was aggravated and began bleeding profusely. Mr. Franklin was jammed and stuck between the front and rear seats for several minutes before he was removed from the vehicle. It took four people to remove him from the vehicle after which he was escorted by the police to Kings County Hospital, while still in handcuffs. Mr. Franklin has recollection of the events that transpired after that point as he was unconscious and only remembers waking up in Kings County Hospital. He was hospitalized for approximately four days as a result of this accident and the circumstances surrounding it. While hospitalized he was still in handcuffs and had a police guard present. The handcuffs were removed on the morning of February 14, 2009..

4.     Mr. Franklin was never charged with a crime and was never arraigned. He never received any documentation from the Police Department or Courts regarding the disposition of the charge against him.

5.     Ultimate responsibility for the horrific events of February 13, 2009 and their

3

aftermath rests with the City of New York and The New York City Police Departments and their agents/employees. Mr. Franklin was falsely arrested and treated in an inhumane manner.

6.      The  policies, customs, and practices of the NYPD have promoted an atmosphere in which the very worst police officers feel assured that evidence of misdeeds depriving citizens of their civil rights, no matter how awful, will go unpunished. With the imposition of punitive damages against all defendants with the exception of the City, plaintiffs hope to deter defendants and bring an end to this intolerable cycle of violence.

## JURISDICTION

7.      This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988; and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the laws of the State of New York.  Jurisdiction is founded upon 28 U.S. C. §§ 1331, 1343(1-4), and 2202.  Plaintiffs further invoke the supplemental jurisdiction of this Court to adjudicate pendant state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

9.      Plaintiff Silvester Franklin is a resident of the City of New York.

10.     Defendant, City of New York (City), is a municipal corporation within the State of

4

New York and the public employer of the police officers named as defendants in this action.

11.   Defendant, New York City Police Department (NYPD), is an agency of the City of New York, existing and operating by virtue of the laws of the State of New York and the City of New York.

12.   In addition to the facts alleged in the following subparagraphs, the following defendants are all sued in their individual and official capacities and all acted within the scope of their employment and under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York:

l.a   Defendant LEI CUI, at all relevant times, was a police officer of defendant Police Department;

l.b   Defendant and KADIA SAUNDERS, at all relevant times, was a police officer of defendant Police Department;

### NOTICE OF CLAIM

13.   Plaintiffs, in furtherance of their state causes of action, filed timely notice of claim against the City in compliance with General Municipal Law Section 50.

14.   More than 30 days have elapsed since service of said notice and the City has failed to pay or adjust the claim.

15.   The City has held a 50-h examination of plaintiffs in advance of commencing this

5

lawsuit.

16.    This action has been commenced within one year and ninety days after the
       happening of the events upon which these claims arise.

## FACTUAL AND GENERAL ALLEGATIONS

17.    During the late evening hours of Friday, February 13, 2009, Silvester Franklin
       was in the process of driving home when, without legal cause, he was arrested by
       one or more police officers. Mr. Franklin had not committed any criminal
       offenses.

18.    The force used was unnecessary, unreasonable, and excessive.

19.    At no time during the events described above did the defendant officers have
       probable cause for the arrest of Mr. Franklin and no legal cause or excuse for his
       seizure.

20.    The actions of all individual defendants were performed within the scope of their
       employment and authority, and for whose acts the defendants City are liable under
       the doctrine of respondeat superior.

21.    The actions of the defendant officers violated Mr. Franklin's clearly established
       rights under the First, Fourth, Fifth, Eighth, Thirteenth and Fourteenth
       Amendments of the Constitution and were the direct and proximate cause of the
       physical and psychological injuries he suffered.

22.    The actions of all defendants were intentional, malicious, and in bad faith, thus

6

giving rise to punitive damages as to all defendants with the exception of the municipality.

## DAMAGES

23.     As a direct and proximate result of the said acts of the defendants, Mr. Franklin suffered the following injuries and damages:

    a.     Violation of his rights under the First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments to the Constitution;

    b.     Loss of physical liberty;

    c.     Physical injuries, pain and suffering, extreme fear, emotional trauma, requiring the expenditure of money for treatment expected to last the rest of his life;

    d.     Economic damages including loss of income; and

    e.     Humiliation, embarrassment, and injury to reputation.

The physical, psychological, and economic consequences of the defendants'

            actions continue to date, and upon information and belief, will

    continue into the                    future.

## CAUSES OF ACTION:

### COUNT I
### 42 U.S.C. § 1983 CONSPIRACY

24.     Paragraphs 1-23 are incorporated by reference as though fully set forth.

25.     The individual defendants, under color of law, conspired with each other, and with

7

others, reached a mutual understanding, and acted to undertake a course of conduct

to injure, oppress, threaten, and intimidate Silvester Franklin in the free exercise

and enjoyment of the rights and privileges and equal protection of the law secured

to him by the Constitution, including the rights: to be free from the intentional use

of unreasonable force; to be free from unreasonable searches and seizures; to

associate and speak freely; to have access to and seek redress in the courts; and to

be free from false arrest, false imprisonment, and the delay and denial of medical

attention.

26.   It was part of the conspiracy that the defendants did, among other acts, physically

assault Mr. Franklin.

27.   In furtherance of the conspiracy and to cover up the acts of brutality, defendants

engaged in the following:

a.   Falsely arrested and imprisoned Mr. Franklin;

b.   Fabricated and contrived the criminal charges lodged against Mr. Franklin;

**COUNT II**
**42 U.S.C. § 1983 - UNREASONABLE AND EXCESSIVE FORCE**

28.   Paragraphs 1-27 are incorporated by reference as though fully set forth.

29.   By their conduct, defendants, under color of law,  deprived Mr. Franklin of his

constitutional right to be free from excessive and unreasonable force.

30.   Mr. Franklin claims damages for the injuries set forth above.

8

## COUNT III
## 42 U.S.C. § 1983 - FALSE ARREST AND IMPRISONMENT

31.   Paragraphs 1-30 are incorporated by reference as though fully set forth.

32.   By their conduct and under color of law, defendants deprived Mr. Franklin of his

constitutional right to be free from false arrest and false imprisonment.

33.   Mr. Franklin claims damages for the injuries set forth above.

## COUNT IV
## 42 U.S.C. § 1983 - FAILURE TO INTERCEDE

34.   Paragraphs 1-33 are incorporated by reference as though fully set forth.

35.   By their conduct and under color of state law, it is believed defendants officers

each had opportunities to intercede on behalf of Mr. Franklin to prevent the

excessive use of force but due to their intentional conduct or deliberate

indifference declined or refused to do so.

36.   As a direct and proximate result, Mr. Franklin suffered the injuries and damages

described above.

## COUNT V
## 42 U.S.C. §§ 1981, 1983 - FIRST, FOURTH, AND FOURTEENTH AMENDMENT VIOLATIONS

37.   Paragraphs 1-36 are incorporated by reference as though fully set forth.

38.   By their conduct and under color of law all individual and officers, deprived Mr.

Franklin of his First Amendment right to have access to and seek redress in the

9

courts.

39.  The defendants engaged in a cover up in order to conceal the wrongful and unlawful conduct taken against Mr. Franklin.

40.  The defendants' efforts to conceal the truth continue to the detriment of Mr. Franklin.

41.  As a direct and proximate result, Mr. Franklin suffered the injuries and damages described above.

### <u>COUNT VI</u>
### 42 U.S.C. § 1985(3) CONSPIRACY WITH RACIAL ANIMUS

42.  Paragraphs 1-41 are incorporated by reference as though fully set forth.

43.  The individual defendants,, under color of law, conspired with each other, reached a mutual understanding, and acted to undertake a course of conduct to injure, oppress, threaten, and intimidate Silvester Franklin in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to him by the Constitution including the rights: to be free from the intentional use of unreasonable force; to be free from unreasonable searches and seizures; to associate and speak freely; to have access and seek redress in the courts;  and to be free from false arrest, false imprisonment, and the delay and denial of medical attention.

44.  The City of New York, through its agents, was a willful participant in joint action with officers acting under color of law.

10

45. It was part of the conspiracy that the defendants did, among other acts, physically assault Mr. Franklin.

46. In furtherance of the conspiracy, and to conceal the crimes and misconduct of all the defendants, with the exception of the municipality, engaged in a cover up.

47. The conduct of the defendants was motivated by racial animus and by their desire to injure, oppress, threaten, and intimidate Silvester Franklin because of his race, African-American.

48. As a proximate and direct result of defendants' conduct, Mr. Franklin suffered the injuries and damages described above.

## COUNT VII
## 42 U.S.C. § 1986 ACTION FOR NEGLECT TO PREVENT

49. Paragraphs 1-48 are incorporated by reference as though fully set forth.

50. On information and belief, the individual named defendants, LEI CUI and KADIA SAUNDERS, had knowledge that a cover up, and 42 U.S.C. 1985(3) conspiracy to cover up the brutality perpetrated against Mr. Franklin were in progress, had the power to prevent or aid in preventing the coverup and conspiracy from continuing, and neglected or refused to do so.

51. With reasonable diligence, defendants could have promptly reported the brutality to superiors. Their failure contributed to Mr. Franklin's remaining under arrest, guarded, and handcuffed throughout, thereby exacerbating his pain and suffering and depriving him of access to the courts.

11

## COUNT VIII
## 42 U.S.C. § 1983 SUPERVISORY LIABILITY

52. Paragraphs 1-51 are incorporated by reference as though fully set forth.

53. Defendant at all times employed , at the relevant times, supervisory personnel at the 79th precinct or in the NYPD, with oversight responsibility for line officer LEI CUI and KADIA SAUNDERS. They were responsible for training, instruction, supervision, and discipline of the officers who brutalized Mr. Franklin.

54. It is believed that defendants supervisory personnel received complaints about the conduct of line officer LEI CUI and KADIA SAUNDERS, and other officers in the 79th precinct, knew about past complaints, aberrant behavior, and disciplinary infractions, or, in the exercise of due diligence, would have perceived that these officers had conduct and disciplinary problems that posed a pervasive and unreasonable risk of harm to Mr. Franklin.

55. Defendants supervisors knew, or in the exercise of due diligence would have known that the conduct of line officer LEI CUI and KADIA SAUNDERS, displayed toward Mr. Franklin was likely to occur.

56. It is believed defendants supervisors failed to take preventative and remedial measures to guard against the brutality and cover up committed by line officer LEI CUI and KADIA SAUNDERS. Had they taken appropriate action, Mr. Franklin would not have been injured.

57. The failure of defendant's employees to supervise and discipline line officer LEI

12

CUI and KADIA SAUNDERS and the other officers of the 79th precinct, amounted to gross negligence, deliberate indifference, or intentional misconduct which directly caused the deprivations suffered by Mr. Franklin.

### COUNT IX
### 42 U.S.C. § 1983 - MONELL CLAIM

58.   Paragraphs 1-57 are incorporated by reference as though fully set forth.

59.   Prior to February 13, 2009, the City developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused the violations of Mr. Franklin's rights.

60.   It was the policy and/or custom of the City to investigate inadequately and improperly civilian complaints of police misconduct. Instead, acts of brutality were tolerated by the City. The Internal Affairs Bureau (IAB) and the Civilian Complaint Review Board (CCRB) have substantially failed to investigate, deliberate, and discipline transgressors. Since the CCRB became independent in 1993, through December 1996 it received 18,336 complaints, yet the NYPD dismissed only one officer as a result of a CCRB investigation. IAB investigations of brutality rarely lead to administrative trials and when they do, and the charges are somehow sustained, the punishment is minimal, lacking any deterrent effect. Since there is no disciplinary sanction available between thirty days' suspension and dismissal, and dismissal is almost always deemed too harsh, even the most brazen acts of brutality, short of murder, are resolved with a slap on the wrist.

61.    The City has been on notice for more than a generation that brutality is
       widespread and that particular reforms need to be implemented.  From reform-
       minded Commissioner Patrick Murphy to the Mollen Commission twenty-five
       years later, the City has been repeatedly cautioned that a systemic tolerance for
       brutality flourishes throughout the NYPD.  Several years before Mr. Franklin was
       brutalized the Mollen Commission report noted, "This tolerance, or willful
       blindness, extends to supervisors as well.  This is because many supervisors share
       the perception that nothing is really wrong with a bit of unnecessary force and
       because they believe that this is the only way to fight crime today."  Mollen
       Comm. Report, at 49.

62.    It was the policy and/or custom to supervise and discipline officers inadequately,
       including the defendant officers, thereby failing to discourage constitutional
       violations on the part of its police officers.

63.    It was and is the policy of the City to give police officers suspected of criminally
       assaulting a civilian a special break -- the "48 hour rule."  In the last twenty years,
       hundreds of civilians have been fatally wounded by police action but only four
       police officers have been convicted for on duty killings since 1977.  The police
       indicted for serious brutality are a precious few; those convicted can be counted on
       one's hands.

64.    The "48 hour rule" delays questioning of police suspects for two business days, a

14

privilege that no other criminal suspect in New York enjoys and that no other police suspect in any other major city in the nation can hide behind. Moreover, it requires that when the target officer is notified, a PBA representative must be present. The PBA representatives, who are almost always members of the NYPD, hear confessions and admissions of brutality, and then conceal them from the Department, a practice condoned by the Department even though the rules and regulations of the NYPD explicitly prohibit it. Additionally, on information and belief, the PBA representatives utilize the 48 hours to assist target officers in conspiring to cover up their crimes and misconduct and thus avoid detection and punishment.

65. Although the "48 hour rule" is supposed to apply only to administrative investigations, it is the City's custom to apply it to criminal investigations as well. Moreover, the 48 hour delay is expressly limited to targets; mere witnesses are to be accorded a four-hour grace period. The custom, however, is to allow the PBA representative instead of the IAB to decide who is a target and who is a witness. In this case, it is believed the PBA representatives invoked the "48 rule" for everyone who was present at the 112th precinct when Mr. Franklin was tortured.

66. Police officers of the City of New York have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately give evidence as to misconduct of

15

which they are aware, thereby establishing and perpetuating a "code of silence."

67.    This "code of silence" is a custom deeply ingrained in the members of the New
York City Police Department so as to constitute the actual policy of the City of
New York.

68.    The City  has been deliberately indifferent to the need for more or different
training, rules and regulations relating to police officers who witness or have
information regarding misconduct by fellow officers.  The City has failed to
properly sanction or discipline officers who are aware of and subsequently conceal
and/or aid and abet violations of constitutional rights of citizens by other New
York City police officers, thereby causing and encouraging New York City police
officers, including the individual defendant officers in this case, to violate the
rights of citizens such as Mr. Franklin.

69.    It is believed the City has maintained no system or an inadequate system of review
of officers who withhold knowledge or give false information regarding
misconduct by fellow officers.  This failure to identify and track such officers,
including the defendant officers, or to discipline, more closely supervise, or retrain
such officers who engage in the "code of silence," causes New York City police
officers to believe that they can engage in misconduct, secure in the knowledge
that their fellow officers will neither intervene, nor give evidence against them.
These systemic deficiencies include, but are not limited to:

16

a.     Preparation of investigative reports designed to vindicate the conduct of

officers who gave false information about the misconduct of other officers and

who falsely denied knowledge about misconduct which they were in a position to

observe.

b.     Preparation of investigative reports which uncritically rely solely on the

word of police officers and which systematically fail to credit testimony of non-

police witnesses.

c.     Preparation of investigative reports which omit or ignore factual

information and physical evidence which contradict the accounts of police officers;

d.     Issuance of public statements exonerating officers involved in such

incidents prior to the completion of investigation.

e.     Failure to have meaningful review of investigative reports by responsible

superior officers for accuracy or completeness, including consideration of the

conduct of officers who were not actively engaged in the misconduct which was

the subject of the investigation, and acceptance of conclusions which are not

supported by the evidence or which contradict such evidence; and

f.     Failure to identify potential "code of silence" violations and maintain

accurate records of allegations of such misconduct.

70.     The City, prior to and at the time of this incident, was aware of the need for more

or different training, rules, regulations, investigation and discipline relating to

police officers who practice the "code of silence," and was deliberately indifferent to that need.

71.    The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the danger of harm to citizens like plaintiff and the need for more or different training and discipline are policies, practices and customs of the City of New York and have caused police officers, including the officer defendants in this case, to believe that they can violate the rights of citizens with impunity, and that their fellow officers would conceal such conduct, including swearing falsely and committing perjury, all with the foreseeable result that officers are more likely violate the constitutional rights of citizens.

72.    As a direct and proximate result of the City's deliberate indifference, defendants violated Mr. Franklin's constitutional rights for which he suffered substantial damages.

## COUNT X
## PENDENT CLAIM OF ASSAULT AND BATTERY

73.    Paragraphs 1-72 are incorporated by reference as though fully set forth.

74.    By their actions, as set forth above, defendants committed atrocious acts of battery against Silvester Franklin which included macing him about the face and body without cause. This use of physical force against Mr. Franklin was unnecessary and excessive.

75.    The City is responsible for the threats and the excessive and unnecessary physical

18

force used by defendants because it occurred while they were acting in the scope of their employment, specifically in the course of arresting Mr. Franklin and while they were executing their responsibility to hold safely him in police custody.

76.    As a result of these physical threats and the excessive and unnecessary physical force used against him, Mr. Franklin suffered severe and serious physical and mental injuries.

**COUNT XI**
**PENDANT CLAIMS OF FALSE ARREST AND FALSE**
**IMPRISONMENT**

77.    Paragraphs 1-76 are incorporated by reference as though fully set forth.

78.    Silvester Franklin was wrongfully, unlawfully, and unjustifiably charged, arrested, detained and deprived of his liberty against his will, and was imprisoned by defendants, police officers LEI CUI and KADIA SAUNDERS.

79.    At all relevant times, these defendants acted forcibly in apprehending Mr. Franklin.

80.    The wrongful, unjustifiable, and unlawful apprehension, arrest, detention and imprisonment was carried out without a warrant.

81.    After his arrest, Mr. Franklin was wrongfully harassed, threatened, in a particularly humiliating fashion and fingerprinting.

82.    Throughout Mr. Franklin's false arrest and imprisonment,  defendants, police officers LEI CUI and KADIA SAUNDERS, did not permit him an opportunity to establish his innocence.

19

83.   At all times mentioned, the unlawful, wrongful, and false arrest and imprisonment of Mr. Franklin was without right or probable cause, and was forcible and against his will.

84.   All of the foregoing occurred without any fault or provocation on the part of Mr. Franklin.

85.   At all relevant times defendants police officers LEI CUI and KADIA SAUNDERS, who were responsible for the false arrest and imprisonment of Mr. Franklin were employees of the NYPD and the City, and were acting for, upon and in furtherance of the business of their employers and within the scope of their employment.

86.   As a result of the false arrest and imprisonment, Mr. Franklin was subjected to humiliation, ridicule, and disgrace.  He was required to incur bills for legal services rendered, and was otherwise injured and damaged.

## COUNT XII
## PENDENT CLAIM OF PRIMA FACIE TORT

87.   Paragraphs 1-86 are incorporated by reference as though fully set forth.

88.   By their actions, as set forth above, defendants LEI CUI and KADIA SAUNDERS, inflicted harm upon Mr. Franklin, without excuse or justification, out of disinterested malevolence.

## COUNT XIII
## PENDENT CLAIM - RESPONDEAT SUPERIOR

89.   Paragraphs 1-88 are incorporated by reference as though fully set forth.

20

90.   At all relevant times, all defendant employees of the City of New York were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

91.   Consequently, the City is liable under the doctrine of respondeat superior for their tortious actions.

### COUNT XIV
### PENDENT CLAIM - AUTOMOBILE NEGLIGENCE

92.   That at all times hereinafter mentioned, defendants, THE CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT, was and still is a municipal corporation and resident of the County of KINGS, City and State of New York.

93.   That at all times hereinafter mentioned, defendant, LEI CUI, was and still is a police officer and a resident of the County of KINGS, City and State of New York.

94.   That at all times hereinafter mentioned, defendants, THE CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT, were the owners of a certain Ford motor vehicle bearing New York State license plate number 2521.

95.   That at all times hereinafter mentioned, defendant, defendants, THE CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT, maintained managed and controlled a certain Ford motor vehicle bearing New York State license plate number 2521.

21

96.   That at all times hereinafter mentioned, defendant, LEI CUI, operated a certain Ford motor vehicle bearing New York State license plate number 2521.

97.   That at all times hereinafter mentioned, defendant, LEI CUI, operated a certain Ford motor vehicle bearing New York State license plate number 2521, with the full knowledge, authority, permission and consent of the defendant, THE CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT.

98.   That at all times hereinafter mentioned, defendant LEI CUI operated said motor vehicle bearing New York State license plate number 2521, in the course and scope of his employment.

99.   That at all times hereinafter mentioned, defendant, LEI CUI, maintained, managed and controlled the aforesaid motor vehicle bearing New York State license plate number 2521.

100.  That at all times hereinafter mentioned, defendant, LEI CUI, maintained, managed and controlled a certain Ford motor vehicle bearing New York State license plate number 2521, with the full knowledge, authority, permission and consent of the defendants, THE CITY OF NEW YORK and THE NEW YORK CITY POLICE DEPARTMENT.

101.  That at all times hereinafter mentioned and prior thereto, Throop Avenue at or near its intersection with Halsey Street, County of KINGS, City and State of New York, was and still is a public highway and thoroughfare.

22

102.    That on or about the 13th day of February, 2009, the aforesaid Ford motor vehicle

owned by defendants, THE CITY OF NEW YORK and THE NEW YORK CITY

POLICE DEPARTMENT, was operated, managed and controlled by defendant,

LEI CUI, over and upon Throop Avenue at or near its intersection with Halsey

Street, County of KINGS, City and State of New York.

103.    That on or about the 13th day of February, 2009, the plaintiff SILVESTER

FRANKLIN was a passenger in the aforesaid Ford motor vehicle operated by

defendant, LEI CUI over and upon Throop Avenue at or near its intersection with

Halsey Street, County of KINGS, City and State of New York.

104.    That on or about the 13th day of February, 2009, at the place aforesaid, the Ford

motor vehicle owned by defendants, THE CITY OF NEW YORK and THE NEW

YORK CITY POLICE DEPARTMENT, and operated by defendant, LEI CUI, was

caused to come in contact with another , over and upon Throop Avenue at or near

its intersection with Halsey Street, County of KINGS, City and State of New York,

thereby causing plaintiff, SILVESTER FRANKLIN to sustain severe and personal

injuries.

105.    That the foregoing accident and the resulting injuries to the plaintiff were caused

solely by reason of the carelessness, negligence, wanton and willful disregard on

the part of the defendants, and without any negligence on the part of the plaintiff

contributing thereto.

106. That by reason of the foregoing, this plaintiff was severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration, and plaintiff will be permanently caused to suffer pain, inconvenience and other effects of such injuries; plaintiff incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of said injuries; and plaintiff has suffered and/or in the future will necessarily suffer additional loss of time and earnings from employment; and plaintiff will be unable to pursue the usual duties with the same degree of efficiency as prior to this accident, all to plaintiff's great damage.

107. That as a result of the foregoing, this plaintiff suffered a serious injury as defined by Section 5102(d) of the Insurance Law of the State of New York.

108. That plaintiff is a 'covered person' as defined by Section 5102(j) of the Insurance Law of the State of New York.

109. That by reason thereof, plaintiff is entitled to recover for non-economic loss and for such economic losses as are not included within the definition of 'basic economic loss' as set forth in Section 5102(a) of the Insurance Law of the State of New York.

110. That by reason thereof, plaintiff is entitled to recover for non-economic loss and for all economic losses sustained.

24

111.   That this action falls within one or more of the exceptions set forth in C.P.L.R 1602.

112.   Pursuant to CPLR Section 1602(2)(iv), defendants are jointly and severally liable for all of plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that defendants owed the plaintiff a non-delegable duty of care.

113.   Pursuant to CPLR Section 1602(7), defendants are jointly and severally liable for all of plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that defendants acted with reckless disregard of the safety of others.

114.   Pursuant to CPLR Section 1602(6), defendants are jointly and severally liable for all of plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that defendants should be held liable by reason of defendants' use, ownership or operation of a motor vehicle.

115.   Pursuant to CPLR Section 1602(2)(iv), the defendant owner is jointly and severally liable for all of plaintiff's damages, including but not limited to plaintiff's non-economic loss, irrespective of the provisions of the CPLR Section 1601, by reason of the fact that said defendant is vicariously liable for the negligent acts and omissions of the defendant operator of said vehicle.

25

116. That by reason of the foregoing, plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

117. That as a result of the defendants negligence as aforesaid, this plaintiff, SILVESTER FRANKLIN, has been damaged an amount which exceeds the jurisdictional limit of all lower courts which would otherwise have jurisdiction.

**WHEREFORE**, plaintiffs request the following relief jointly and severally as against all of the defendants:

1. Award compensatory damages in an amount to be determined at trial;

2. Award punitive damages in an amount to be determined at trial;

3. Disbursements, costs, and attorneys' fees; and

4. For such other and further relief as to this Court may seem just and proper.

## <u>PLAINTIFFS DEMAND TRIAL BY JURY</u>

Dated:  Great Neck, New York
        May 4, 2010

                                        Respectfully submitted,

                                        MARTIN KANFER 1895
                                        3 NORTHERN BLVD
                                        GREAT NECK, NY 11021
                                        516 482 6293

27